26297. TYRE *v.* WESTERN UNION TELEGRAPH CO.

DECIDED SEPTEMBER 10, 1937.

*C. D. Stewart, Poole & Fraser,* for plaintiff.
*Heyman & Heyman, C. E. Gregory Jr.,* for defendant.

SUTTON, J. J. B. Tyre brought suit against the Western Union Telegraph Company for damages alleged to have been sustained because of the delay by the defendant in delivering money transmitted by wire order. The defendant admitted the delay, but denied that the plaintiff had suffered any special damage. The jury returned a verdict in favor of the plaintiff for $500, and upon motion the court granted a new trial; to which judgment the plaintiff excepted.

It appears from the evidence that the plaintiff operated a tomato farm near Leesburg, Florida, the sale of the tomatoes being handled through a commission merchant in Atlanta, to whom a commission of ten per cent. was paid. During the busy season the plaintiff was located in Atlanta, where he superintended the sales, his wife remaining in Leesburg to supervise the picking, packing, and shipping of the tomatoes. A total of fifteen to eighteen pickers were required to pick in one day a truck-load of tomatoes. Only five or six were regular employees, those who could be depended on to work when needed, the rest being obtained from floating labor. The personnel of the latter varied

with each picking engagement, their acceptance of employment being governed by their mood. At the time the damage was alleged to have been sustained it was difficult to induce help from the floating element, the watermelon season then being under way and offering better wages to labor. It was shown that the Atlanta market was such that it was hazardous to ship tomatoes thereto unless orders had been obtained in advance, and that without such orders for tomatoes ready for picking it was found more advantageous to let them rot on the vines. The plaintiff would frequently cause to be transmitted by wire the necessary funds for his wife to meet pay-rolls; and on Saturday, June 20, 1936, at 1:10 p. m., he sent the $75 here involved, an accompanying message reading: "Load Atlanta truck to-day Williams next strip loads market stronger." In explanation of this message the evidence showed that the plaintiff did not operate trucks himself, but engaged those of others at a trip rate of $45 per load, and that Williams, who lived at or near Leesburg, was easily accessible, but that one Bowers had been sent down with a truck, at some reduced hauling expense, to bring the Saturday picking of tomatoes to Atlanta. Consequently the plaintiff was instructing his wife to let Bowers haul the Saturday load of tomatoes to Atlanta, and to use the Williams truck next. The plaintiff testified that at the time of ordering the transmission of the money he informed the receiving office of the defendant that it was necessary that it go through promptly in order to pay off his employees and to insure shipment of tomatoes. In this he was corroborated by Swann, his commission merchant. The agent of the defendant, who accepted the order, admitted that he was told that the money was needed for pay-roll purposes that day, but testified that he did not recall anything being said about shipments of tomatoes being dependent on the prompt receipt of the funds. The message, authorizing the payment of the $75, was by mistake of the defendant sent to Tifton, Georgia, instead of to Leesburg, the error not being detected and the money not made available at Leesburg until the following Monday afternoon. When Bowers reached Leesburg Saturday afternoon, Mrs. Tyre, not having received notice of his coming, wired her husband at 3:54 p. m. as follows: "Did you send Bowers truck for tomatoes? Wire money for labor at once. Advise." At 6:10 p. m. on the

same day the plaintiff wired his wife: "Load Bowers truck three hundred ten lugs. Have wired money." Accordingly, the Bowers truck was loaded and reached Atlanta the next day. Before the money had been made available at Leesburg at 1:41 p. m. Monday afternoon, Mrs. Tyre had left for Atlanta. She was communicated with at Ocala, Florida, and informed by the defendant's Leesburg representative that the money was on hand. She replied that she would see about the matter later, and continued on to Atlanta, no further shipment of tomatoes being made until the latter part of the week.

There was evidence that, as a result of the failure of the payroll money to reach Leesburg Saturday afternoon, the hands refused to work Sunday and Monday, and that tomatoes were ready for picking on such days. The plaintiff claimed damages on account of alleged rotting of the tomatoes, contending that if picked and shipped to Atlanta they would have been sold at a profit; and he alleged his loss to be $1050. The contract, however, limited liability of the defendant to $500; and the court charged the jury that their verdict, in the event they found for the plaintiff, could not exceed $500.

It is, of course, well settled that the appellate courts will not reverse a judgment granting a first new trial unless it is made to appear that no verdict other than the one rendered could reasonably have been returned under the law and the facts. In addition to the above recital of facts, the following evidence is set forth as more pertinent to the question whether or not the verdict was demanded: The plaintiff testified that he was hauling from six to eight loads of tomatoes a week to Swann. The evidence of Swann shows that in the period of about twelve days before the money was ordered to be transmitted he received a load on June 12; that three days later he received another load; one day later another load; three days later another load; and two days later another load. This testimony is somewhat illustrative of the picking frequency of the tomatoes, as it was shown that they were not gathered and shipped except in the case of orders already secured, and is to be considered in construing a certain telegram from Mrs. Tyre to her husband. That telegram contains an expression which the defendant contends shows that, despite the delay in the transmission of the money, no loss resulted to the plaintiff, be-

cause it disclosed (so it is argued) that no tomatoes were available for picking and immediate shipment after the Bowers load went forward. The telegram filed by the wife, before her husband wired her the money on Saturday, read as follows: "Williams truck and pick up [truck] leaving to-night *All until Thursday.*" [Italics ours.] It was because of the reference to such trucks that the husband, upon receipt of such message, then wired his wife to use the Bowers truck first and the Williams truck next; and the words "All until Thursday" furnish the main bone of contention between the parties in the present case. It is argued by the defendant that the only reasonable construction of such language is that Mrs. Tyre was advising her husband that the Saturday load contained all the tomatoes that could be shipped until the following Thursday; and therefore that no tomatoes were ready for picking on Sunday and Monday, and the delay in making the pay-roll money available was not the proximate cause of the plaintiff's loss. The plaintiff testified that he understood the words to mean that it was not his wife's intention to ship any more tomatoes unless she received orders. The wife testified: "When I said 'All until Thursday' I meant at that particular picking. By 'all' I meant at that particular picking. I don't know what I meant by 'This is all until Thursday.'" On Monday the plaintiff wired his wife: "Wired seventy-five Saturday forty-five to-day. Have thousand lugs here. [About three truckloads]." In explanation of this telegram the plaintiff testified that while he did have one thousand lugs of tomatoes on hand in Atlanta, they had been sold. This was corroborated by Swann. It is contended by the defendant that the words "Have thousand lugs here" can reasonably mean only that the plaintiff was notifying his wife not to ship any more tomatoes until he sent her orders, and that such was their usual understanding; and that the contention of the plaintiff that he needed tomatoes, to be shipped Sunday and Monday, and which rotted on the vines, can not be supported under the proved facts, even if the tomato farm would have yielded the necessary tomatoes on Sunday and Monday. It is further contended, that the record of shipments shows that, after the shipment of Saturday, it did not necessarily follow that tomatoes were ready for picking Sunday or Monday; that in the twelve-day period just before the Saturday shipment

only five loads were received in Atlanta; and that the evidence did not demand a finding that another load could have been picked immediately after the Saturday picking and have been shipped on Sunday. Mrs. Tyre testified, and was corroborated by her foreman, that tomatoes were ready for picking on Sunday and Monday; but the quantity was not shown. Nor was it affirmatively shown that the necessary labor would have been available, or that orders were actually sent by the plaintiff for any tomatoes that might have been picked Sunday or Monday; and it is argued by the defendant that the absence of Mrs. Tyre on Monday, and for several days thereafter, did not lend much countenance to the contentions of the plaintiff as to the possibility of shipping tomatoes after Saturday.

We think that enough has been set forth to demonstrate that the evidence was such that reasonable men might differ about what verdict should have been rendered, and that certainly it can not be said that a verdict in favor of the plaintiff was demanded. Accordingly, the first grant of a new trial in the present case will not be disturbed.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*